**Billy Wayne BROYLES, Linn M. Broyles, Plaintiffs–Appellants,**

v.

**Herman D. BAYLESS, Defendant,**

**Tennessee Farmers Mutual Insurance Company, Defendant–Appellee.**

No. 88–8607.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1989.

Office of C. Ronald Patton, Rome, Ga., Irwin Marc Ellerin, Ellerin & Williams, Denise Hinds, Atlanta, Ga., for plaintiffs-appellants.

Webb, Carlock, Copeland, Semler, & Stair, Atlanta, Ga., Douglas Meriwether Campbell, Office of Douglas Meriwether Campbell, Chattanooga, Tenn., Rebecca Frazier, Webb, Carlock, Copeland, Semler & Stair, Atlanta, Ga., for Herman D. Bayless.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CLARK, Circuit Judge:

This appeal arises from the district court's dismissal of a personal injury diversity action involving an automobile collision on Monteagle Mountain in Marion County, Tennessee. After conducting a nonjury trial on the issue of liability, the district court held that, under Tennessee law, it should have considered the citizenship of one of the plaintiff's uninsured motorist carriers in determining subject matter jurisdiction. Because both the insurance carrier and the plaintiff are citizens of Tennessee, the district court dismissed the suit for lack of diversity. We find that the district court erred and we reverse.

## I. BACKGROUND

On May 13, 1986, on Interstate 24 in Marion County, Tennessee, plaintiff Billy W. Broyles, a Tennessee State Trooper, stationed his patrol car near a guard rail in order to render assistance to an individual whose motorhome had broken down. Although Broyles had his blue lights and flashers turned on, defendant Herman D. Bayless, a Georgia resident, collided into the rear of the patrol car. Broyles filed suit against Bayless in the Northern District of Georgia to recover for the personal injuries sustained in the accident. His wife, Linn M. Broyles, also a Tennessee resident, joined in the suit claiming loss of consortium. The plaintiff alleged diversity of citizenship as the basis for federal jurisdiction.

Broyles also filed a claim for underinsured motorist benefits with his underinsured motorist carrier, Tennessee Farmers Mutual Insurance Company, (Tennessee Farmers). Thus, in compliance with T.C.A. § 56–7–1201, *et seq*, Broyles served a copy of the summons and complaint filed against Bayless upon Tennessee Farmers. On September 29, 1986, Tennessee Farmers filed a motion to dismiss the action against Bayless, alleging that no diversity existed between Tennessee Farmers and the plain-

tiffs, and that the district court therefore lacked subject matter jurisdiction. Tennessee Farmers is a Tennessee corporation which is located and has its headquarters in Columbia, Tennessee. In addition, Tennessee Farmers does business only within the state of Tennessee. The district court denied the motion to dismiss.

In February, 1988, Tennessee Farmers filed a motion to sever the coverage issues from the liability issues. The district court denied this motion but agreed to have the coverage issues decided separately from the issue of liability. On April 13, 1988, Tennessee Farmers renewed its motion to dismiss for lack of diversity or other subject matter jurisdiction. Before ruling on the renewed motion, the district court conducted a nonjury trial. After the parties submitted proposed findings of fact and conclusions of law, the district court held a hearing on the renewed motion to dismiss. Relying heavily on a recent Tennessee district court case, *Hillis v. Garner*, 685 F.Supp. 1038 (E.D.Tenn.1988), the district court granted the renewed motion and dismissed the case for lack of jurisdiction. This appeal follows.

## II. DISCUSSION

The issue in this case is easily stated: Should a federal court consider the residence of an uninsured motorist carrier, served with process pursuant to Tennessee's uninsured motorist statute, when determining diversity for federal jurisdiction purposes? Tennessee Farmers alleges that under Tennessee law it is legally a party defendant to any tort claim filed against an uninsured defendant even though it is not designated as a defendant in the record. In addition, Tennessee Farmers argues that it has a real and substantial stake in the outcome of the proceedings and that therefore, it is a real party in interest. Under these circumstances, Tennessee Farmers claims that its residency must be considered in determining diversity.

The appellants counter that the uninsured motorist carrier's residency should not be considered for the purpose of determining whether diversity exists. The ap-

pellants argue that Tennessee Farmers is interested only in coverage issues and that these issues, while not severed, were separated from the underlying tort action. The appellants further argue that Tennessee Farmers has no substantial stake in the liability issue and is, therefore, merely a formal or nominal party that need not be considered for purposes of diversity jurisdiction in the primary civil action. Because of the law's unique treatment of insurance companies as parties in tort litigation and because Tennessee Farmers was not the primary defender of this lawsuit, we find that the district court should not have considered the company's citizenship in determining diversity jurisdiction.

## A. CHOICE OF LAW

As a matter of federal law, a plaintiff must ground diversity jurisdiction upon "citizens" who are real and substantial parties to the controversy. *Navarro Savings Association v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980). Federal courts look to the substantive law of the state, however, to determine whether an individual, although a party to the lawsuit, is a real and substantial party to the litigation. *Jones v. Griffith*, 688 F.Supp. 446, 450 (N.D.Ind.1988), *vacated on other grounds*, 870 F.2d 1363 (7th Cir. 1989). This hurdle prevents a party with an insufficient interest in the litigation from using his or her citizenship to transfer a local controversy into one within federal diversity jurisdiction and vice-versa. *See Wilsey v. Eddingfield*, 780 F.2d 614 (7th Cir.1985), *cert. denied*, 475 U.S. 1130, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986). Thus, Federal courts do not consider the controlling state's procedural law as to who must be a party to any given action, but rather look to determine upon whom the state confers substantive rights. Wright & Miller, *Federal Practice and Procedure*, Civil § 1544 (1971). *Cf. Lumbermen's Mutual Casualty Company v. Elbert*, 348 U.S. 48, 51, 75 S.Ct. 151, 154, 99 L.Ed. 59 (1954) (insurance company real party in interest where state law gave plaintiff direct cause of action against the company). In

this case, we must first decide which state's law controls the action.

■ In diversity cases, a federal court applies the law of the forum in which it sits. *Cambridge Mutual Fire Insurance Company v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir.1983). Thus, the district court correctly consulted Georgia's choice of law in resolving this case. Georgia adheres to the traditional choice of law system. "Under this system tort actions are adjudicated according to the law of the place where the wrong occurred, and contract actions are regulated by the law of the state where the contract was made when matters of execution, interpretation or validity are at issue...." *Wallace v. Harrison*, 166 Ga.App. 461, 462–63, 304 S.E.2d 487, 489 (1983).

With these principles in mind, it is apparent that Tennessee law governs the substantive issues of this case. The accident occurred in Tennessee and, therefore, Tennessee law controls all of the substantive issues of the tort. Likewise, because the insurance policy was formed in Tennessee, Tennessee law governs the disputed issues of coverage. We therefore turn to Tennessee law to ascertain what substantive rights, if any, it confers upon uninsured motorist carriers.

## B. THE UNINSURED MOTORIST CARRIER

■ Tennessee has enacted an uninsured motorist statute which provides, in pertinent part:

Service of Process—Actions by Insurers —John Doe Warrants—Arbitration.—

(a) Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner proscribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in

its own name; provided, however, that nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice; provided further, that the evidence of service of process upon the insurance carrier shall not be made part of the record.

T.C.A. § 56–7–1206. Tennessee courts construing this statute have held:

> The whole intent and purpose of the uninsured motorist act, is, in essence to provide *protection* by making the insurance carrier stand as *the insurer of the uninsured motorist*, with two necessary consequences. (1) The suit has to be brought against the uninsured motorist, with the fact of insurance excluded as a possible prejudicing factor, as in any other such case; and (2) the insurance company is bound by the judgment rendered in that suit, to the extent of its limits, where it is afforded the statutory opportunity to defend the uninsured motorist.

*Glover v. Tennessee Farmers Mutual Ins. Co.*, 225 Tenn. 306, 313, 468 S.W.2d 727, 730 (1971) (emphasis added). *See also Thearp v. Travelers Indemnity Company*, 504 S.W.2d 763, 766 (Tenn.App.1972). Furthermore, Tennessee's uninsured motorist statute does not allow direct actions to be brought against the uninsured motorist carrier for another party's negligence. "Under normal circumstances, suit may not be brought directly against the uninsured motorist insurance company." *Webster v. Harris*, 727 S.W.2d 248, 251 (Tenn.App. 1987). Apparently, Tennessee contemplates that the uninsured motorist carrier will stand in the same position as the defendant's own insurance company would stand if the defendant had one (or in the same position as the defendant's insurance company, which has insufficient policy limits, actually stands).

This conclusion requires us to reject the opinion of *Hillis v. Garner*, 685 F.Supp. 1038 (E.D.Tenn.1988) on which the district court in this case heavily relied. In *Hillis*, the district court reasoned that because the Tennessee uninsured motorist statute gives an uninsured motorist carrier the legal right to defend itself in the tort action and "because the Tennessee courts consider the uninsured motorist carrier legally a party defendant," the carrier's residency must be considered in determining diversity. *Id.* at 1040. We do not agree that an insurance company's legal right to be a party in a lawsuit, without more, confers "real party in interest" status upon that company. Although Tennessee procedurally recognizes the uninsured motorist as a party defendant in liability actions, this recognition does not automatically make the carrier a real party to the action.

For instance, in *White v. Wright*, 566 F.2d 990 (5th Cir.1978), we recognized that under the Georgia uninsured motorist statute, a statute very similar to the one in Tennessee in that it requires service of process on the uninsured motorist carrier and allows the carrier to defend in its own name or in the name of the defendant, a carrier is not automatically a real party to the action.

> The uninsured motorist carrier is not a defendant as such in this litigation.... [W]hile not actually a defendant, though it could defend the case in its own name, the uninsured motorist carrier has a strong financial interest in the litigation. As such, it is entitled to notice of the pendency of the action on the same basis as though a defendant.

*Id.* at 991 (citations omitted). Likewise, under the Tennessee statute, an insurance carrier does not necessarily enjoy the status of a "real party." Because the Tennessee courts place the uninsured motorist carrier in the same position as that of the tortfeasor's own insurer, Tennessee Farmers' status as a party turns on the same principles as are generally applied in liability insurance law.

## C. THE INSURANCE COMPANY AS A PARTY

In general, a real party in interest is a party that has a real and substantial stake in the litigation and who exercises *substantial control* over the litigation. *Navarro* 100 S.Ct. at 1784 (emphasis added). The definition of a "real party in interest," however, breaks down in the area of insurance law because of the courts' historic treat-

ment of insurance companies in tort litigation. Although liability insurance companies often have a real and substantial stake in their insured's litigation, they are usually not treated as parties to an action involving their insured. This is true even though the company has a contractual obligation to pay for the litigation and/or to pay any judgment rendered against the ultimate tortfeasor.

Thus, for example, Fed.R.Evid. 411, prohibits the use of any evidence that a party was or was not insured against liability for any purpose relating to that party's negligence. In addition, in the typical scenario, insurance companies defend the insured "in cognito" so as to preserve its anonymity and remain undetected by the jury. *Cf. Webster*, 727 S.W.2d at 251. Because of the indirect and invisible roles often played by insurance companies in tort litigation, courts generally do not recognize these companies as real parties to an action unless they have become subrogated to the rights of their insured after payment of the loss, they are defending actions brought directly against them, or when, for some reason, they must assume primary and visible control of the litigation. *Compton v. D'Amore*, 101 A.D.2d 800, 800–01, 475 N.Y. S.2d 463, 466 (1984); *See also Lumbermen's*, 348 U.S. at 51, 75 S.Ct. at 154 (insurance company real party in interest when plaintiff brings direct action); *O.M.*

*Greene Livestock Company v. Azalea Meats, Inc.*, 516 F.2d 509, 510 (5th Cir.1975) (insurance company real party in interest when plaintiff voluntarily dismissed insured). This paradoxical treatment of insurance companies stems from the companies' contingent and often indirect potential for liability in tort litigation as well as from the recognition that jurors will be much more inclined to award high damages to an injured party if they are aware that an insurance company will ultimately bear the burden of the award.

In this case, we are not concerned with those situations in which an insurance company becomes a real party by procuring the right to enforce an action, as a plaintiff, through subrogation. Nor are we concerned with those situations in which the insurance company must defend itself against a "direct action" as that term is used in 28 U.S.C. § 1332(c) or as that term would apply to actions brought solely against an insurance company over such issues as payment or coverage.[1] Rather, we are concerned with those situations in which the insurance company becomes the real party in interest as a defendant because it inherits the sole duty to defend or it exercises visible and substantial control over the litigation. To aid us in our "real party inquiry" in this case, we must consider the essential nature and effect of the proceedings in question. *Adden v. Middle-*

---

**1.** Technically, a "direct action" is one in which "the liability sought to be imposed could be imposed against the insured." *Fortson v. St. Paul Fire and Marine Insurance Company,* 751 F.2d 1157, 1159 (11th Cir.1985). Several states, such as Louisiana and Wisconsin, have statutes which allow an injured party to sue an insurance company for payment of a claim without joining the company's insured as a party. In such cases, the state has given the injured party "a separate and distinct cause of action against the insurer which an injured party may elect *in lieu* of his action against the tortfeasor," *Lumbermen's,* 75 S.Ct. at 154. Where such direct actions are permitted, the injured party in many cases would elect to sue a diverse insurance company alone, without joining the nondiverse insured, in order to create diversity jurisdiction. In response to the many cases brought in federal court that were essentially local in nature, Congress enacted 28 U.S.C. § 1332(c). This statute eliminates diversity jurisdiction where direct actions are allowed by the state and the

plaintiff and the insured are nondiverse parties by providing that "in any direct action against the insurer ... to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen...."

Of course, outside of the statute, a direct action is any action in which the insurance company is being sued for its own acts or omissions. *Fortson,* 751 F.2d at 1159–60; *Irvin v. Allstate Insurance Company,* 436 F.Supp. 575, 577 (W.D. Okla.1977) (in action by insured against own insurer not to establish tortfeasor's liability but rather to collect under uninsured motorist policy, court considered insurer's residency in determining diversity); *Bourget v. Government Employee Insurance Company,* 313 F.Supp. 367, 371 (D.Conn.1970), *rev'd on other grounds,* 456 F.2d 282 (2d Cir.1972) (in action by judgment creditor of insured against insurer for bad faith failure to settle claim, insurance company's residency considered in determining diversity).

*brooks*, 688 F.2d 1147, 1150 (7th Cir.1982); *New York v. General Motors Corp.*, 547 F.Supp. 703, 704 (S.D.N.Y.1982).

In looking at the essential nature and effect of the proceedings of this case, we are convinced that while Tennessee Farmers has a financial stake in the litigation, it is not a real party in interest for purposes of determining diversity. In this case, Tennessee Farmers' liability is contingent and indirect. Tennessee Farmers is, in effect, twice removed from direct liability in this action. First, the plaintiff must be awarded damages greater than the amount for which the defendant's own insurance company has responsibility. Second, before liability may be imposed on Tennessee Farmers, the issues of coverage must be litigated. The district court ordered this litigation to be conducted separately from the tort litigation, although it is to remain part of the original proceeding. *See also Gatlin v. Tennessee Farmers Mutual Insurance Company*, 741 S.W.2d 324, 325 (Tenn. 1987). Thus, under general principles determining the party status of liability insurance companies, Tennessee Farmers does not have the direct stake in the litigation that might otherwise make it a real party in interest regardless of its degree of participation. As a result, because of the peculiarity of liability insurance law, the question of whether Tennessee Farmers is a real party turns on whether it exercised substantial control of this action.

The present action is not one in which Tennessee Farmers incurred, through default, the primary obligation to defend the lawsuit because it became the *only* defendant in the lawsuit. *Compare O.M. Greene Livestock*, 516 F.2d at 510 (insurance company primary defender when plaintiff voluntarily dismissed insured); *Webster*, 727 S.W.2d at 251-52 (insurance company primary party when tortfeasor is unknown); *Wilkinson v. Vigilant Insurance Company*, 236 Ga. 456, 224 S.E.2d 167 (1976) (under Georgia uninsured motorist statute, which is comparable to the one in Tennessee, insurance company is real party in interest when tortfeasor is discharged in bankruptcy so that no liability could attach to him). Furthermore, Tennessee does not allow direct actions against the uninsured motorist company. Instead it confers on the insurance company only the *option*, not the absolute obligation, to take substantial control of the defense in these types of lawsuits. The uninsured motorist statute provides that "nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice." Thus, although Tennessee Farmers has the right to defend the action, this right is secondary to Bayless' right to defend. In this case, Bayless employed counsel and, as a result, Tennessee Farmers did not substantially control the litigation. Indeed, the trial transcript in this case reveals that Tennessee Farmers took a back seat to the defendant's counsel throughout the liability proceedings. Bayless' counsel conducted opening argument, presented the witnesses, and conducted all direct and cross examination of the witnesses on the issue of liability. Tennessee Farmers participation in the tort proceeding was minimal.

In sum, the essential nature of the present proceeding is an action in tort between diverse citizens for the recovery of injuries sustained in an automobile accident. The essential effect of the lawsuit is to adjudicate the liability of Bayless. If Bayless successfully defends himself, Tennessee Farmers will escape any financial obligations to Broyles.

Finally, we note that the Tennessee uninsured motorist statute attempts to protect the anonymity of the insurance company as in any other insurance liability case. *Webster*, 727 S.W.2d at 251. It makes little sense to allow the company to proceed "in cognito" and yet consider its phantom presence in determining diversity. Although an uninsured motorist carrier is given the option to defend in its own name, rarely will such an event occur if there is a jury trial. Unless this rarity occurs and is coupled with substantial participation during trial, an insurance company's citizenship should not be considered for diversity purposes. Considering the residency of a largely invisible uninsured motorist carrier would not serve the claimed purpose of

diversity which is to prevent local prejudice. The controversy, for all intent and purpose, would appear to the jury as a dispute between two residents of different states and indeed, that would be the core of the proceeding.

### III. CONCLUSION

No reasons exist for transferring what is essentially an interstate dispute into a local one. *Cf. Lester v. McFaddon,* 415 F.2d 1101, 1104 (4th Cir.1969) (diversity jurisdiction meant to exclude purely local controversies even if they have a contrived interstate appearance). As Congress recognized in passing 28 U.S.C. § 1332(c), it is the parties involved in the accident, not the insurance company, that should normally define the local or interstate nature of the action. Unless the insurance company interjects itself into the controversy in such a way that it has direct liability and/or active, visible and primary control of the litigation, its citizenship should not be considered for purposes of diversity jurisdiction.

While Tennessee law confers upon Tennessee Farmers the option to defend the lawsuit, it also requires that the action be brought against the tortfeasor and that the tortfeasor be allowed to employ counsel of choice. Thus, if Tennessee Farmers either cannot or does not exercise the option to actively and visibly defend the lawsuit, it lacks the requisite control over the litigation to be a real party in interest for diversity purposes.

In this case, Broyles and not Tennessee Farmers substantially controlled the litigation. Both of the Broyles are Tennessee residents and Bayless is a Georgia resident. The amount in controversy is satisfied and therefore diversity jurisdiction exists. The district court order is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion.