**Marie TOOLE and Chris Toole, Plaintiffs,**

v.

**Matthew CHUPP, et al., Defendants.**

**Civil Action No. 2:06cv652–MHT.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 19, 2006.

Jimmy Spurlock Calton, Jr., Calton & Calton, Eufaula, AL, for Plaintiff.

Randall C. Morgan, Hill Hill Carter Franco Cole & Black, Montgomery, AL, Courtney Reilly Potthoff, Joel P. Smith, Jr., Williams, Potthoff, Williams & Smith, LLC, Eufaula, AL, for Defendants.

OPINION AND ORDER

MYRON H. THOMPSON, District Judge.

In this case, which was removed from an Alabama state court to federal court based

on complete diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332(a), two issues are presented on a motion to remand. The first is whether the state citizenship of a defendant uninsured motorist carrier that has 'opted out' pursuant to Alabama law should be considered in determining whether this court has removal jurisdiction.[1] The second is whether the jurisdictional amount requirement is met. For reasons that follow, this court concludes that it should not consider the carrier's citizenship and that the jurisdictional amount is met. As a result, this case will not be remanded to state court.

## I.

Plaintiffs Marie Toole and Chris Toole brought this lawsuit in state court against defendants Matthew Chupp, Don Bramlett, and ALFA Insurance Company. This lawsuit arises out of a vehicular collision in which Marie Toole and Chupp were the drivers. Relying on Alabama law, Marie Toole asserts negligence, wantonness, and recklessness claims against Chupp and a negligent entrustment claim against Bramlett, the owner of the vehicle Chupp was driving; Chris Toole has a loss-of-consortium claim against Chupp and Bramlett; and both the Tooles have an uninsured motorist claim against ALFA, their uninsured motorist carrier.

1975 Ala.Code § 32–7–23 provides protection for "persons ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." Under Alabama law, a plaintiff is allowed either to join as a party defendant her own liability insurer in a suit against the uninsured motorist or merely to give it notice of the filing of the lawsuit and of the

possibility of a claim under the uninsured motorist coverage at the conclusion of the trial. *Lowe v. Nationwide Ins. Co.*, 521 So.2d 1309, 1310 (Ala.1988). If named as a party, the insurer can elect either to participate in the litigation or 'opt out' and, while still a named defendant, sit on the sidelines; if not joined but merely given notice, it can either intervene or to stay out of the case. *Id.* ALFA elected to opt out of the Tooles' lawsuit.

All three defendants then removed this lawsuit to federal court based on complete diversity jurisdiction. The Tooles are citizens of Alabama; Chupp and Bramlet are citizens of Georgia, and ALFA is a citizen of Alabama. The defendants acknowledge that complete diversity is lacking where any party on one side of a lawsuit is from the same State as any party on the other side. *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). They contend, however, that, although the Tooles and ALFA are all Alabama citizens, there is still complete diversity because ALFA has opted out of this litigation and thus is a nominal party whose citizenship can be ignored for jurisdictional purposes. The Tooles contend that ALFA's presence destroys diversity.

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Therefore, the critical question is whether ALFA is a real party to the controversy presented by this case or is simply a nominal one.

In *Broyles v. Bayless*, 878 F.2d 1400 (1989), the Eleventh Circuit Court of Ap-

---

1. As statutorily defined, "uninsured motorist" includes "underinsured motorist." 1975 Ala.  Code § 32–7–23(b).

peals confronted a similar issue. There, a Tennessee plaintiff sued a Georgia defendant in a Georgia federal court, basing jurisdiction on complete diversity and asserting claims arising of a car accident in Tennessee; the Tennessee plaintiff also served a copy of his lawsuit on his Tennessee uninsured motorist carrier, and, as allowed by Tennessee law, that carrier participated in the Georgia federal court, including filing a motion to dismiss which contended that the court lacked diversity jurisdiction because the carrier and the plaintiff were from the same State.[2] The trial court agreed and dismissed the lawsuit. On appeal, the Eleventh Circuit stated the question as, "Should a federal court consider the residence of an uninsured motorist carrier, served with process pursuant to Tennessee's uninsured motorist statute, when determining diversity for federal jurisdiction purposes?" *Broyles*, 878 F.2d at 1401.

In answering this question, the *Broyles* court observed that, "Because the Tennessee courts place the uninsured motorist carrier in the same position as that of the tortfeasor's own insurer, [the uninsured motorist carrier's] status as a party turns on the same principles as are generally applied in liability insurance law." *Broyles*, 878 F.2d at 1403.[3] The court then discussed and applied these general principles of liability insurance law.

First, the *Broyles* court observed that, "In general, a real party in interest is a party that has a real and substantial stake in the litigation and who exercises substantial control over the litigation." *Broyles*, 878 F.2d at 1403. "The definition of a 'real party in interest,' however, breaks down," the court continued, "in the area of insurance law because of the courts' historic treatment of insurance companies in tort litigation." *Id.* at 1403–1404. The court stated that, "Although liability insurance

---

**2.** According to *Broyles*, Tennessee law then provided in pertinent part:

> "Service of Process–Actions by Insurers–John Doe Warrants–Arbitration.–
> (a) Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner proscribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this subsection shall prevent such owner or operator from employing counsel of his own choice; provided further, that the evidence of service of process upon the insurance carrier shall not be made part of the record."

878 F.2d at 1402–1403 (**quoting T.C.A. § 56–7–1206**).

**3.** According to *Broyles*, "Tennessee courts have held that " 'The whole intent and purpose of the uninsured motorist act, is, in essence to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist, with two necessary consequences. (1) The suit has to be brought against the uninsured motorist, with the fact of insurance excluded as a possible prejudicing factor, as in any other such case; and (2) the insurance company is bound by the judgment rendered in that suit, to the extent of its limits, where it is afforded the statutory opportunity to defend the uninsured motorist." ' " *Broyles*, 878 F.2d at 1403 (quoting *Glover v. Tennessee Farmers Mutual Ins. Co.*, 225 Tenn. 306, 313, 468 S.W.2d 727, 730 (1971)). "Furthermore," according to *Broyles*, "Tennessee's uninsured motorist statute does not allow direct actions to be brought against the uninsured motorist carrier for another party's negligence." *Id.* "Apparently, Tennessee contemplates that the uninsured motorist carrier will stand in the same position as the defendant's own insurance company would stand if the defendant had one (or in the same position as the defendant's insurance company, which has insufficient policy limits, actually stands)." *Id.*

companies often have a real and substantial stake in their insured's litigation, they are usually not treated as parties to an action involving their insured ... even though the company has a contractual obligation to pay for the litigation and/or to pay any judgment rendered." *Id.* at 1404. "[I]in the typical scenario, insurance companies defend the insured 'in cognito' so as to preserve [their] anonymity and remain undetected by the jury." *Id.* The court then concluded that, "It makes little sense to allow the company to proceed 'in cognito' and yet consider its phantom presence in determining diversity." *Id.* at 1405.

To these general principles of liability insurance law, the *Broyles* court outlined three exceptions that focused on the company's visibility in and control over the tort suit: "[ (1) where the insurance companies] have become subrogated to the rights of their insured after payment of the loss, [ (2) ] are defending actions brought directly against them, or [ (3) ], for some reason, they must assume primary and visible control of the litigation." *Id.* at 1404. The *Broyles* court then held that, because none of the above exceptions applied to the case at hand, the uninsured motorist carrier was a nominal party and thus the trial court had diversity jurisdiction. *Id.* at 1405–1406.

The above general observations (that is, the general principles and the exceptions to them) apply with equal force to Alabama's liability insurance law, for Alabama, like Tennessee, sets forth a scheme that allows insurance companies to defend the insured 'in cognito' by requiring the insured to give notice to the insurer and allowing the insurer the option of participating in the litigation. While the Tennessee and Alabama insurance schemes may differ in some ways, they are sufficiently the same that the above principles and exceptions, as they are articulated in *Broyles,* apply to Alabama's.[4]

Therefore, the question for this court is whether any of the above three exceptions apply to the Tooles' case, and the answer is that none does. ALFA is not enforcing this action through subrogation; nor is it "defend[ing] itself against a 'direct action,'" *Broyles,* 878 F.2d at 1404, that is, "one in which 'the liability sought to be imposed could be imposed against the insured,'" *id.* at 1404 n. 1 (quoting *Fortson v. St. Paul Fire and Marine Insurance Company,* 751 F.2d 1157, 1159 (11th Cir. 1985)), or one over "its own acts and omissions." *Id.* Instead, it is apparent from the record in this case (in particular, the representations made by counsel for all parties at oral argument on September 13, 2006) that the Tooles named ALFA as a defendant for the sole purpose, as required by Alabama law, of putting its insurer on notice of the pendency litigation and giving the insurer the opportunity to participate or opt out. Now that ALFA has opted out (and even has made explicit in its notice of opt out that it "agrees to be bound by the verdict of the jury and agrees to pay any judgement in accordance with its policy of insurance"), the Tooles and ALFA simply have no dispute between them at this time.

---

4. While it appears that, unlike the Tennessee law, *see supra* note 3, Alabama law provides for an action in which the uninsured motorist carrier may be sued independently from the tortfeasor, *see Ex Parte State Farm Mut. Auto. Ins. Co.,* 893 So.2d 1111, 1115 (Ala.2004) (under the underinsured motorist act, "[t]he plaintiff is not required to first obtain a judgment against the uninsured/underinsured motorist"), this fact is of no consequence here, where the Tooles do not bring such an action. The court in *Broyles* found that, where the insurance company had, and apparently exercised, its option to defend, but took a "backseat" to the alleged tortfeasors' counsel, it was only a nominal party. It cannot be that an insurance company that opts out completely is more "visible" or has more "control" than the insurance company in *Broyles.*

Also, ALFA is not assuming control of, or seeking to control, the litigation; indeed, the company has opted out of the litigation, agreeing to abide by the outcome of any jury trial. Thus, as in *Broyles,* the liability of the insurance company is entirely "contingent and indirect," 878 F.2d at 1404, in the sense that Chupp and Bramlett will litigate entirely the issue of fault, upon which any issue concerning ALFA's policy is contingent. *See Quick v. State Farm Mut. Auto. Ins. Co.,* 429 So.2d 1033, 1035 (Ala.1983) (in order to establish liability against underinsured motor carrier, plaintiff "must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages.") (internal quotations and citations omitted). Moreover, Chupp and Bramlett have secured their own counsel and retained complete control over the action.

Therefore, ALFA's involvement here is insufficient to take it outside the general rule that "[liability insurance companies] are usually not treated as parties to an action involving their insured." *Broyles,* 878 F.2d at 1404.

This result is also consistent with the Congressional intent behind 28 U.S.C. § 1332(c), which provides that, "in any direct action against the insurer ... to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen." Section 1332(c) was passed in response to situations where, in direct-action States, the injured party would elect to sue a diverse insurance company alone, without joining the nondiverse insured, in order to create diversity jurisdiction. *Broyles,* 878 F.2d at 1404 n. 1. Conversely, a plaintiff should not be able to defeat diversity jurisdiction by adding an uninsured motorist carrier that is playing only a nominal role.

## II.

Finally, the court finds that the three defendants have shown "by a preponderance of the evidence that the amount in controversy more likely than not exceeds $ 75,000." *Alexander v. Captain D.'s, LLC,* 437 F.Supp.2d 1320, 1320 (M.D.Al.2006) (Thompson, J.) (internal citations and quotations omitted). This standard applies where, as here, the amount in controversy is not clear on the face of the complaint. *Id.* Although ALFA submits no depositions, the Tooles' complaint alleges that Chupp and Bramlett are underinsured, although they are insured for $ 100,000; Marie Toole alleges substantial bodily harm, including harm that required surgery, and will cause lifelong pain and suffering; and, perhaps most importantly, counsel for the Tooles acknowledged at oral argument on September 13, 2006, that he could see a jury "bringing back more than seventy-five thousand." It thus appears "more likely than not," *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1320 (11th Cir.2001), that the amount in controversy is met.

Accordingly, it is ORDERED that plaintiffs Marie Toole and Chris Toole's motion to remand (Doc. No. 6) is denied.