[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10165
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-01770-TCB

GENERAL STAR INDEMNITY COMPANY,

Plaintiff – Counter Defendant,

AMWINS BROKERAGE OF ALABAMA,
THE CONE COMPANY,

Plaintiffs – Third Party Defendants –
Appellees,

versus

TRIUMPH HOUSING MANAGEMENT, LLC,

Defendant - Third Party Plaintiff -
Counter Claimant - Appellant

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 13, 2021)

Before MARTIN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Triumph Housing Management, LLC, a property management company, appeals the district court's dismissal of its claims for negligent procurement of insurance and negligent misrepresentation against insurance broker AmWINS Brokerage of Alabama and insurance agent The Cone Company. AmWINS and Cone have moved to dismiss the appeal, arguing that Triumph's notice of appeal was untimely and otherwise failed to comply with the Federal Rules of Appellate Procedure, and that Triumph's claims against them are now moot. We hold that Triumph's notice of appeal was timely and sufficient to invoke our appellate jurisdiction, and that Triumph's claims against AmWINS and Cone are not moot.

On review of the merits, we conclude that the allegations in Triumph's third-party complaint were sufficient to state claims for negligent procurement against AmWINS and Cone, and we therefore reverse the district court's orders dismissing those claims and remand for further proceedings consistent with this opinion. Triumph has abandoned any argument regarding the district court's dismissal of its negligent misrepresentation claims, however, so we affirm the court's orders in relevant part.

2

I.

General Star Indemnity Company initiated this action for declaratory judgment against Triumph, seeking a declaration that the insurance policy it had issued to Triumph was void ab initio and should be rescinded, and alternatively, that the policy issued to Triumph provided scheduled coverage—that is, it provided coverage only for the structures specifically listed in the policy, up to the listed value for each structure—rather than blanket coverage that insured all structures on any given property up to a single set limit.  General Star alleged that AmWINS, a wholesale insurance broker, obtained the policy from General Star for Triumph, but Triumph had provided misinformation during the underwriting process—failing to correctly state the values and number of buildings at issue, failing to report past losses, and failing to adequately describe the buildings. Triumph filed counterclaims against General Star for reformation, breach of contract, bad faith, and vicarious liability for negligence by AmWINS, which Triumph alleged was acting as a dual agent for General Star and Triumph in brokering the policy.

Triumph also filed a third-party complaint against AmWINS and Cone, an insurance agency that had helped secure the policy, for negligence and negligent misrepresentation.  Triumph alleged that AmWINS and Cone were negligent in procuring a policy for scheduled coverage when it had requested blanket coverage

3

and in failing to ensure that all structures were adequately covered. It further alleged that AmWINS and Cone had concealed or failed to communicate that the policy was for scheduled coverage, rather than the blanket coverage it requested.

AmWINS moved to dismiss Triumph's third-party claims against it and General Star moved to dismiss Triumph's counterclaims in part, and the district court granted both motions. With respect to AmWINS, the court concluded that Triumph's first amended third-party complaint failed to state a claim for negligent procurement against AmWINS under Georgia law, which insulates insurance agents from liability for procuring the wrong coverage when the client fails to read the policy to determine what coverage is provided. The court also found that Triumph failed to plead the element of justifiable reliance in its negligent misrepresentation claim against AmWINS because if it had read the policy, it would have known that AmWINS had not procured the blanket coverage that Triumph had requested.

Cone later moved for judgment on the pleadings on grounds similar to those raised in AmWINS's motion to dismiss. Triumph moved for reconsideration of the dismissal of its claims against AmWINS and for leave to file an amended third-party complaint. In a single order, the district court granted Cone's motion and denied Triumph's motions. The court again found that Triumph's claim for negligent procurement was barred by its failure to read the policy procured by

4

Cone, and that Triumph had failed to plead justifiable reliance in its negligent misrepresentation claim. Regarding the motion to amend, the court concluded that amendment would be futile because the proposed second amended third-party complaint still failed to allege plausible claims of negligence or negligent misrepresentation against AmWINS or Cone, in light of Triumph's admitted failure to read the policy.

General Star's declaratory judgment complaint and Triumph's counterclaim against General Star for breach of contract remained pending for several months after the court dismissed Triumph's claims against AmWINS and Cone. In December 2019, General Star and Triumph filed a joint motion to dismiss the action pursuant to a settlement agreement. The district court entered a final consent order on December 13, 2019, dismissing all claims and counterclaims between General Star and Triumph, returning to Triumph the insurance premiums paid, and rescinding the policy and declaring it void ab initio.

On January 10, 2020, Triumph filed a notice of appeal, specifically referencing the orders (1) granting AmWINS's motion to dismiss, and (2) granting Cone's motion for judgment on the pleadings, denying Triumph's motion for reconsideration of the order dismissing its claims against AmWINS, and denying its motion for leave to amend its third-party complaint.

5

After Triumph filed its opening brief in this appeal, AmWINS and Cone separately moved to dismiss for lack of jurisdiction. In its motion, AmWINS contends that Triumph's notice of appeal is "untimely and improper" because it specifically designates two nonappealable interlocutory orders rather than the final consent judgment. AmWINS also argues that the final consent order rendered this appeal moot because (1) the consent order declared the policy it procured for Triumph void ab initio, so "there can be no live case or controversy that centers on how that policy was procured for Triumph, or what alleged representations were made to Triumph about its terms," and (2) Triumph is not liable to General Star under the consent order, so its third-party claims—which AmWINS argues can only be brought to recover some portion of the first-party defendant's liability to the first-party plaintiff—are moot. In its motion to dismiss, Cone adopts AmWINS's arguments and also contends that by consenting to the final order rescinding the policy, Triumph made factual admissions that render its third-party claims against Cone moot.

## II.

We must first consider the matter of our own jurisdiction. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). We begin with the third-party defendants' argument that Triumph's notice of appeal was insufficient to invoke

6

our jurisdiction, and then we consider whether the district court's consent

judgment rendered the issues for appeal moot.

A.

Rule 3(c) of the Federal Rules of Appellate Procedure specifies that a notice

of appeal must, among other things, "designate the judgment, order, or part thereof

being appealed." Rule 4(a) provides that the notice of appeal required by Rule 3

must be filed "within 30 days after entry of the judgment or order appealed from."

Both the timeliness and the content requirements are jurisdictional in civil cases.

*Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d

707, 722 (11th Cir. 2020) (content); *see Hamer v. Neighborhood Hous. Servs. of

Chicago*, 138 S. Ct. 13, 21 (2017) (timeliness). But an "appeal must not be

dismissed for informality of form or title of the notice of appeal." Fed. R. App. P.

3(c)(4). And the requirements of Rule 3(c) are liberally construed, especially

where the defect in the appellant's designation of the order appealed from did not

mislead or prejudice the appellee. *See Smith v. Barry*, 502 U.S. 244, 248 (1992);

*Nichols v. Ala. State Bar*, 815 F.3d 726, 730 (11th Cir. 2016).

Construed liberally, Triumph's notice of appeal was neither untimely nor

improper. The two orders specified in Triumph's notice of appeal were

interlocutory orders that were not immediately appealable when they were entered.

*See Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir.

7

2012).  But when "a district court enters a final judgment, 'all prior non-final orders and rulings which produced the judgment' are merged into the judgment and subject to review on appeal."  *Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1563 (11th Cir. 1993) (quoting *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989)).  This means that Triumph could have appealed the orders dismissing AmWINS and Cone by specifying just the final consent judgment in its notice of appeal, even though the substance of Triumph's appeal involves only the prior interlocutory orders.  *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1356 (11th Cir. 2008).  In other words, because nonfinal orders dismissing some claims or parties merge into and become part of the final judgment, a notice of appeal from the final judgment encompasses those earlier nonfinal orders even if the notice of appeal does not mention them.  *Id.*; *see Myers v. Sullivan*, 916 F.2d 659, 673 (11th Cir. 1990).

Given these principles, we construe Triumph's notice of appeal as representing the converse proposition—that is, because the nonfinal dismissal orders merged with and became part of the final judgment, Triumph's notice of appeal specifying those orders complies with Rule 3(c)'s requirement that it designate the judgment "or part thereof" being appealed.  Neither AmWINS nor Cone contends that Triumph's designation of the specific orders it sought to challenge misled or prejudiced them.  *See Nichols*, 815 F.3d 730.  And because

Triumph filed its notice of appeal within 30 days after the district court entered its final, appealable order—into which the interlocutory orders being appealed merged—its notice of appeal was timely, and Rule 4 provides no bar to our jurisdiction either.

B.

Article III of the Constitution limits this Court's jurisdiction to "cases" and "controversies." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011). The case or controversy requirement has "three strands of justiciability doctrine—standing, ripeness, and mootness." *Id.* (citation omitted). An issue becomes moot, and therefore nonjusticiable, "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* (citation omitted).

1.

AmWINS and Cone argue that because the final consent judgment declared the insurance policy issued by General Star to be "void ab initio," Triumph's claims that they acted negligently in procuring the policy must be moot. Not so.

In its third-party complaint, Triumph claimed that AmWINS and Cone were negligent in failing to obtain the insurance coverage that it requested, and that the policy that AmWINS and Cone procured instead was inadequate, resulting in uncovered losses. *See Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*,

9

119 F.3d 1505, 1509 (11th Cir. 1997) (explaining that an insurance agent may be liable to the insured under Georgia law if it negligently fails to procure insurance coverage).[1]  The fact that the policy that the third-party defendants procured turned out to be not just inadequate but void does nothing to moot Triumph's claims.  "A contract that is void ab initio is a contract that never existed."  *Pruco Life Ins. Co. v. Wells Fargo Bank, N.A.*, 780 F.3d 1327, 1332 (11th Cir. 2015).  Whether AmWINS and Cone procured inadequate coverage or no coverage at all, a live controversy remains as to whether they were negligent for failing to procure the coverage that Triumph requested.

2.

AmWINS and Cone also argue that under Rule 14, a defendant's third-party claims must be derivative of the claims made against that defendant by the first-party plaintiff.  If Triumph's third-party claims against AmWINS and Cone were derivative of General Star's claims against Triumph, they reason, then the consent judgment resolving General Star's claims without imposing liability on Triumph must have rendered Triumph's third-party claims moot.  This argument relies on a too-narrow reading of Rule 14 and misunderstands the nature of General Star's claims against Triumph.

---

[1] The parties agree that Georgia law applies.  *See Broyles v. Bayless,* 878 F.2d 1400, 1402 (11th Cir. 1989).

Federal Rule of Civil Procedure 14 permits a defendant to implead a third-party defendant "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The "use of the word 'claim' in Rule 14 avoids the narrow concepts of 'cause of action' and employs instead the idea of the claim as a group of operative facts giving occasion for judicial action." *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967).[2] Thus, "when the defendant's right against the third party is merely an outgrowth of the same core of facts which determines the plaintiff's claim, impleader is properly used 'to reduce litigation by having one lawsuit do the work of two.'" *Id.* Impleader is only available, however, when "the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982); *see also Joe Grasso & Son, Inc.*, 380 F.2d at 751 (explaining that "the defendant must attempt to pass on to the third party all or part of the liability asserted against" it).

In this action, General Star did not seek to hold Triumph liable to it in the usual sense; rather, it asked for a declaratory judgment rescinding and voiding the insurance policy it had issued to Triumph—in other words, General Star sought a declaration that it was not liable to Triumph under the policy. Triumph responded

---

[2] Decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

that the policy should be construed to provide coverage for its losses, based in part on General Star's alleged vicarious liability for AmWINS's negligence in procuring the policy. And it brought third-party claims against AmWINS and Cone alleging that if General Star was not required to cover its losses under the policy, then AmWINS and Cone were liable for those losses because they negligently failed to procure a policy that provided coverage.

Although the claim of the first-party plaintiff in this declaratory judgment action is not a typical claim for payment of money damages, impleader of a third-party defendant under Rule 14 works much the same way in this context. General Star sought a declaration that would enable it to avoid liability to Triumph under the policy—effectively shifting the burden for Triumph's losses back to Triumph—and Triumph sought to pass on liability for those losses to AmWINS and Cone. Triumph's third-party claims against AmWINS and Cone were "secondary to, or derivative of" General Star's declaratory judgment claims, in that they were contingent upon General Star's success in its effort to avoid paying Triumph's insurance claims. Under our precedent, impleader is permissible in a declaratory judgment action like this one, where the issues raised by the defendant in its third-party complaint are "closely intertwined" with the claims of the declaratory judgment plaintiff. *Am. Fid. & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956).

12

If Triumph had prevailed, then its policy with General Star would have been construed to cover its losses, and Triumph's third-party negligence claims may have become moot at that stage. By the terms of the consent order, however, the policy issued by General Star was rescinded and void, leaving Triumph without coverage for its losses—and under those circumstances, as we have already explained, Triumph's claims that AmWINS and Cone failed to procure the requested coverage are not moot.

3.

In addition to the arguments discussed above, Cone argues that by consenting to the judgment voiding the General Star policy, Triumph made factual admissions that rendered its claims against Cone moot. By agreeing to the relief that General Star sought in its complaint, the argument goes, Triumph admitted the truth of General Star's allegations "concerning the alleged provision of material misrepresentations of fact during the procurement and underwriting process sufficient to justify rescission." And having admitted to the misrepresentation of material facts in obtaining the policy, Cone continues, Triumph (1) is equitably estopped from claiming that the lack of coverage is Cone's fault, and (2) has ratified any material misrepresentations made by Cone, absolving Cone of any liability to Triumph for those misrepresentations.

13

One obvious flaw in this reasoning is its initial premise—contrary to Cone's arguments, Triumph made no factual admissions in the joint motion to dismiss or in the consent order. The joint motion to dismiss simply stated that General Star and Triumph had reached a settlement and no longer wished to pursue their claims against each other. The consent order granted the relief requested by the parties in the joint motion to dismiss—rescinding the policy and declaring it void ab initio, returning to Triumph the amount it paid to General Star in insurance premiums, and dismissing all the remaining claims and counterclaims between General Star and Triumph—without making any factual findings. The fact that the consent order granted the same relief that General Star sought in its complaint does not constitute a factual admission by Triumph.

In any event, equitable defenses that Cone may raise to Triumph's claims against it do not render those claims moot. A plausible claim for money damages ensures a live controversy, even where recovery on the claim is uncertain or even unlikely. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). Triumph continues to allege that it suffered financial losses caused by Cone's (and AmWINS's) negligence in failing to obtain the insurance coverage that it requested, and a judgment in Triumph's favor against Cone (or AmWINS) would provide meaningful relief for Triumph's alleged injury.

14

III.

Having satisfied ourselves that we have jurisdiction to hear the appeal, we proceed to the merits.  Triumph argues that the district court erred in granting AmWINS's motion to dismiss and Cone's motion for judgment on the pleadings, because (1) the duty to read its insurance policy does not bar its negligent procurement claims where it did not have a copy of the insurance policy until it had already suffered several losses; and (2) Triumph's reliance on AmWINS's and Cone's expertise to procure the right coverage excused it from the duty to examine the policy in detail, and the lack of adequate coverage was not readily apparent from the policy.  Triumph also argues that the district court abused its discretion in denying Triumph's motion to reconsider the dismissal of its third-party claims and its motion for leave to amend its third-party complaint.  We consider each argument in turn.

A.

We review the grant of a Rule 12(b)(6) motion to dismiss de novo.  *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021).  "In doing so, we accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Id.*  A court considering a Rule 12(b) motion is generally limited to the facts alleged in the complaint or contained in documents that are either attached to the complaint or referred to in the complaint and central

15

to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).

To avoid dismissal, the complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We also review a district court's entry of judgment on the pleadings pursuant to Rule 12(c) de novo, "accepting the facts in the complaint as true and viewing them in the light most favorable to the nonmoving party."  *Abdur–Rahman v. Walker*, 567 F.3d 1278, 1280–81 (11th Cir. 2009) (citation omitted).  "Judgment on the pleadings is appropriate when no material facts are in dispute and the movant is entitled to judgment as a matter of law."  *Washington v. Rivera*, 939 F.3d 1239, 1242 (11th Cir. 2019).

Under Georgia law, "an insurance agent who undertakes to procure a policy of insurance for his principal but negligently fails to do so may be held liable to the principal for any resulting loss."  *Atlanta Women's Club, Inc. v. Washburne*, 427 S.E.2d 18, 20 (Ga. Ct. App. 1992).  But where the agent does procure a policy and the insured fails to examine it to determine what coverage is provided, the insured

16

will not have a viable claim for negligent procurement "if, prior to suffering the uninsured loss, he had the alleged non-conforming policy in his possession." *England v. Georgia-Fla. Co.*, 402 S.E.2d 783, 785 (Ga. Ct. App. 1991).

Even where the insured is not in physical possession of the policy, his claim for negligent procurement may be barred if he had actual prior knowledge of, or in the exercise of ordinary diligence he could have learned, the terms and conditions of the policy. *See Four Seasons Healthcare, Inc.*, 682 S.E.2d 316, 318 (Ga. Ct. App. 2009) (insured "knew about and requested" the exclusion at issue); *Fregeau v. Hall*, 396 S.E.2d 241, 243 (Ga. Ct. App. 1990) (application signed by insured's wife with power of attorney for insured clearly specified type of coverage provided in policy). For example, the Georgia Court of Appeals has held that the duty to read barred an insured's negligent procurement claim where the insured was in possession of the policy's declaration pages, renewal documents, or other materials that provided notice of the relevant terms of the policy. *See Martin v. Chasteen*, 841 S.E.2d 157, 160 (Ga. Ct. App. 2020) (declaration pages); *MacIntyre & Edwards, Inc. v. Rich*, 599 S.E.2d 15, 18 (Ga. Ct. App. 2004) (renewal documents); *Hunt v. Greenway Ins. Agency*, 443 S.E.2d 661, 661–62 (Ga. Ct. App. 1994) (application for insurance).

Thus, to satisfy its obligation to exercise ordinary diligence, an insured without a copy of its policy generally must make some effort to learn the policy's

17

terms. *Martin*, 841 S.E.2d at 160. In *Brasington v. King*, for instance, the insured's negligent procurement claim was barred where, although the insured was not himself in possession of his policy, he knew that his bank had a copy of the policy and he made no effort to review it. 307 S.E.2d 16, 18–19 (Ga. Ct. App. 1983). Whether a party has exercised ordinary diligence is generally a question for the jury, except where the evidence is "plain, palpable and undisputable." *Weeks v. Remington Arms Co.*, 733 F.2d 1485, 1490 (11th Cir. 1984); *see Beard v. Audio Visual Servs., Inc.*, 580 S.E.2d 272, 273 (Ga. Ct. App. 2003) ("What constitutes ordinary diligence, under any particular circumstances, is a question for the jury.").

A partial exception to the duty to read applies "where the agent, acting in a fiduciary relationship with the insured, holds himself out as an expert in the field of insurance and performs expert services on behalf of the insured under circumstances in which the insured 'must rely [up]on the expertise of the agent to identify and procure the correct amount or type of insurance.'" *Atlanta Women's Club, Inc.*, 427 S.E.2d at 20 (alteration in the original) (citation omitted). The insured may also be excused from the obligation to examine its insurance policy if "the evidence reflects a special relationship of trust or other unusual circumstances which would have prevented or excused [the insured] of his duty to exercise ordinary diligence." *Canales v. Wilson Southland Ins. Agency*, 583 S.E.2d 203, 204 (Ga. Ct. App. 2003) (alteration in the original) (citation omitted).

18

Triumph argues that it was relieved of its duty to examine its insurance policy because it relied on AmWINS's and Cone's expertise to procure adequate coverage for its properties. We disagree. The facts alleged in Triumph's third-party complaint show that Triumph did not rely on AmWINS or Cone to select the appropriate kind or amount of insurance.

Triumph alleged that it asked Cone to provide pricing for "the same property insurance coverage" that the policy it had at the time provided, which was blanket coverage. It also alleged that it would not have agreed to the policy that Cone and AmWINS procured if it had known that the policy provided scheduled coverage rather than blanket coverage. The expert exception does not apply under these circumstances because Triumph specified exactly what coverage it wanted—it did not ask Cone or AmWINS to decide what type or amount of coverage would be adequate. Filling Triumph's order required no expertise by Cone or AmWINS and left nothing to their discretion.

But while the expert exception did not relieve Triumph of its duty to examine the policy or related materials in its possession, the duty to read does not necessarily bar Triumph's negligent procurement claims against AmWINS and Cone under the circumstances alleged in Triumph's third-party complaint. As we have explained, an insured's duty to read its policy under Georgia law amounts to an obligation to exercise ordinary diligence to verify that no ambiguity or

19

discrepancy exists between the insurance coverage requested and the coverage provided by the policy. *See Hunt*, 443 S.E.2d at 662. If the insured was otherwise on notice of the disputed terms, or if the policy was available to him and he failed to review it, then the fact that he did not receive a copy of the policy will not excuse him from the duty to find out the contents of the policy. *See Brasington*, 307 S.E.2d at 19.

But an insured's duty to read his insurance policy and verify its terms does not require him to be clairvoyant. Thus, under Georgia law, an insured "clearly cannot be charged with a legal duty to read an endorsement she never received which changed her original policy upon renewal." *Pennsylvania Millers Mut. Ins. Co. v. Dunlap*, 264 S.E.2d 483, 475 (Ga. Ct. App. 1980); *see Hunt*, 443 S.E.2d at 662 ("Because Hunt did not receive her copy of the policy before the loss, she could not have examined its contents."). And where the insured specified exactly what coverage it wanted and was not otherwise on notice of the discrepancies between the coverage it requested and the coverage actually provided by the policy, the viability of the insured's claim for negligent procurement "is ultimately dependent upon whether appellee had the replacement policy in its possession prior to suffering the uninsured loss." *England*, 402 S.E.2d at 785.

Triumph alleged that it did not receive a copy of the General Star policy until after several claims had arisen under it. For purposes of Triumph's negligent-

20

procurement claims against AmWINS and Cone, therefore, the pivotal question is whether the remaining facts alleged in Triumph's third-party complaint support an inference that Triumph exercised ordinary diligence to find out the terms of the policy issued by General Star and verify that it provided the coverage that Triumph sought.

The district court did not consider that pivotal question. Instead, relying on *Southeastern Security Insurance Company v. Empire Banking Company*, 498 S.E.2d 282 (Ga. Ct. App. 1998), the district court concluded that Triumph would be assumed to know the terms of its policy under Georgia law. The district court's reliance on *Empire Banking* is misplaced.

In that case, the plaintiff sued in contract to enforce an auto insurance policy against the insurance company. The Georgia Court of Appeals held that "[i]nsured persons under an insurance policy are presumed to know its conditions if they intend to rely upon its benefits, or else they must find out those conditions." 498 S.E.2d 282, 284 (Ga. Ct. App. 1998) (quoting *Cotton States Mut. Ins. Co. v. Hipps*, 481 S.E.2d 876, 878 (Ga. Ct. App. 1997)). In other words, where one party seeks to enforce an insurance contract, he may be bound by an exclusion contained in the contract even if he did not have the policy in his possession; "the courts must adhere to the contract made by the parties even if it is beneficial to the insurer and detrimental to the insured, for we must construe the contract as written." *Hipps*,

21

481 S.E.2d at 878.  Here, however, Triumph seeks to hold AmWINS and Cone

liable for negligence in failing to procure insurance coverage, not to enforce the

insurance contract against the insurer.  *See Four Seasons Healthcare, Inc.*, 682

S.E.2d at 318–19 (setting out the general rule in a negligent-procurement case that

an insured "who *has the policy in his possession prior to the uninsured loss* is

charged with the knowledge of the terms and conditions of the policy, namely and

in particular that the policy coverage was not as contracted for between the

parties." (emphasis added) (quoting *England*, 402 S.E.2d at 704–05)).

Moreover, the insurance policy at issue in *Empire Banking* was a renewal

policy, so the insured was on notice of the policy's terms even if he had not

received the renewal documents.  *Empire Banking*, 498 S.E.2d at 284.  In addition,

the application for insurance signed by the insured included a notice that warned

the applicant of a requirement related to the relevant exclusion.  *Id.*

By contrast, Triumph alleged that (1) it gave specific instructions regarding

the type and amount of insurance that it wanted, (2) at the time that the insurance

binder issued, Cone reported to Triumph that it had applied for blanket coverage

on Triumph's behalf, and it understood that the policy to be issued by General Star

was for blanket coverage, and (3) it did not receive a copy of the General Star

policy until after several of its losses had occurred.  Although the allegations

provide sparse information relevant to whether Triumph exercised ordinary

22

diligence in verifying that the General Star policy provided the coverage it requested, we cannot say that the matter is so plain from the face of Triumph's complaint that dismissal at the pleading stage was warranted—especially where, as discussed below, Triumph may have been able to allege additional supportive facts if it had been given an opportunity to amend its complaint.   In ruling on AmWINS's motion to dismiss and Cone's motion for judgment on the pleadings, the district court erred in disregarding as irrelevant Triumph's allegation that it did not receive the nonconforming policy until after sustaining several of its losses, without considering whether the facts alleged in Triumph's third-party complaint showed that it was otherwise on notice that the policy did not provide the coverage it requested, or that it could have learned the terms of the policy through the exercise of ordinary diligence.  We therefore reverse the district court's orders dismissing Triumph's third-party negligent procurement claims.

B.

We turn last to Triumph's motion for leave to amend its third-party complaint.[3]  Under Rule 15, a plaintiff may amend his complaint with leave of the court, which should be given freely "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A party who requests leave to amend ordinarily must be given at least

---

[3] Because we reverse the district court's order granting AmWINS's motion to dismiss, we need not address Triumph's motion for reconsideration of that order.

one opportunity to do so before the complaint is dismissed. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). The district court need not allow an amendment, however, "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). "We review the district court's refusal to grant leave to amend for abuse of discretion, although we exercise *de novo* review as to the underlying legal conclusion that an amendment to the complaint would be futile." *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1336 (11th Cir. 2010) (citation omitted). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) (citation omitted).

In its proposed amended third-party complaint, Triumph added more detailed allegations about AmWINS's and Cone's actions in procuring the scheduled insurance policy from General Star. We agree with the district court

24

that the additional facts alleged by Triumph still did not support Triumph's claim that it relied on AmWINS's or Cone's expertise in procuring insurance coverage. Triumph again alleged that it informed Cone that it wanted "the same property insurance coverage" that it had before. Triumph's additional allegation that without Triumph's knowledge or consent, AmWINS and Cone compiled information necessary to obtain scheduled coverage does not change the fact that Triumph specified the type and amount of coverage it wanted, leaving nothing to AmWINS's and Cone's discretion.

But Triumph's proposed amended complaint also contained allegations that in late November 2017, Triumph's manager emailed Cone and asked for information about coverage under the policy. According to Triumph, Cone "provided a complicated, technical response" to the manager's inquiry "that did not mention that the coverage was scheduled, rather than blanket." Triumph's allegation that it inquired about the coverage provided under the policy less than a month after coverage was bound but before its first loss—and before it received a copy of the policy—shows that it made some effort to find out the terms of its insurance policy. Because these allegations support an inference that Triumph exercised ordinary diligence to verify that the policy provided the coverage it requested, its proposed amendment was not futile. Under Rule 15's liberal

25

standard, therefore, Triumph should be given the opportunity to amend its third-party complaint in this regard. *See Corsello*, 428 F.3d at 1014.

IV.

We conclude that Triumph's notice of appeal properly invoked our appellate jurisdiction, and the issues that Triumph raises on appeal are not moot. We therefore DENY Appellees' motions to dismiss the appeal for lack of jurisdiction. We further conclude that the district court erred in dismissing Triumph's claims for negligent procurement against AmWINS and Cone at the pleading stage, without giving Triumph at least one opportunity to amend its complaint to allege additional relevant facts. We therefore reverse the district court's dismissal of Triumph's negligent-procurement claims against AmWINS and Cone, and we remand with instructions for the district court to allow Triumph at least one opportunity to amend its third-party complaint to allege additional facts relevant to those claims. Because Triumph has abandoned any argument that the district court erred in dismissing its negligent misrepresentation claims, however, we affirm in relevant part.[4]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[4] *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) ("passing references" to an issue in an appellant's opening brief are not enough to bring the issue before this Court on appeal).