IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 EASTERN DIVISION 

CHARLES SULLINS, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) CIVIL ACT. NO. 3:20-cv-0530-ECM 
 ) (WO) 
 ) 
JEFFREY MORELAND, et al., ) 
 ) 
 Defendants. ) 

 MEMORANDUM OPINION AND ORDER 
 I. INTRODUCTION 
 The idea “that the plaintiff is the master of the complaint” is central to federal 
question jurisprudence. Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987). What goes 
hand in hand with this understanding is a plaintiff is held responsible for strategic decisions 
he makes when crafting his complaint through the addition or subtraction of parties or 
claims. Id; See also Lincoln Prop. Co. v. Roche, 546 U.S. 81, 88–91 (2005) (citing 16 J. 
Moore et al., Moore's Federal Practice § 107.14[2][c], p. 107–67 (3d ed. 2005)). But the 
Plaintiff here requests that this Court depart from this understanding by finding no 
jurisdiction exists. Charles Sullins (“Plaintiff”) asks this Court to remand his suit against 
Jeffery Moreland (“Moreland”), his employer J & J Martin, Inc. (“J & J Martin”), and 
Geico Casualty Company (“Geico”) (collectively “Defendants”) back to state court for lack 
of subject matter jurisdiction. The Plaintiff argues that the Defendants have failed to show 
by the preponderance of the evidence that the required amount in controversy exists. This 
is after the Plaintiff added his insurance carrier Geico for an underinsured motorist (“UIM”) 
claim that is only triggered if the damages for his various other claims exceed $1,000,000. 

It seems like the Plaintiff wants to have his cake (potentially recovering against his insurer 
if his damages exceed $1,000,000) and eat it too (proceed in state court). Upon 
consideration of the motion and for reasons that follow, the Court concludes that the motion 
to remand (doc. 14) is due to be DENIED. 
 II. STANDARD OF REVIEW 

 Federal courts are courts of limited jurisdiction and therefore possess only the power 
authorized by the Constitution or statute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 
U.S. 375, 377 (1994). Courts should presume that a case lies outside of this limited 
jurisdiction, and the burden of establishing the contrary should be upon the party asserting 
jurisdiction. Id. Although a defendant has the statutory right to remove in certain situations, 

the plaintiff is still the master of his claim. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 
(11th Cir. 1994). For that reason, the defendant’s right to remove and the plaintiff’s right 
to choose his forum are “not on equal footing.” Id. Accordingly, the defendant’s removal 
burden is a heavy one. Id. 
 A defendant may remove a case based on diversity jurisdiction under two 

circumstances. First, a defendant may immediately remove a case to federal court within 
thirty days of receipt of the initial pleadings if it is apparent that complete diversity and the 
required amount in controversy exist. See 28 U.S.C. § 1446(b)(1) (2012) (formerly called 
paragraph one removal). Second, if the amount in controversy was not apparent from the 
initial pleading, a defendant has the opportunity to remove the case within thirty days of 
receiving a document later establishing the requisite amount in controversy. To prove that 
the amount in controversy is later discernible, the defendant must provide “an amended 

pleading, motion, order or other paper from which it may first be ascertained that the case 
is one which is or has become removable.” § 1446(b)(3) (formerly called paragraph 2 
removal). In this instance, “other paper” under subsection (b)(3) is “information relating 
to the amount in controversy in the record of the State proceeding, or in responses to 
discovery . . . .” § 1446(c)(3)(A). 

 When the plaintiff does not specify the amount in controversy, the importance of 
these two removal opportunities is not just that they provide defendants two discrete 
windows when removal is appropriate, but they also require courts to apply two different 
standards to determine whether federal jurisdiction exists. Under both standards, a 
defendant desiring to remove a case to federal court must file with a district court a “notice 

of removal . . . containing a short and plain statement of the grounds for removal, together 
with a copy of all process, pleadings, and orders” served on the defendant. § 1446(a). If a 
plaintiff does not specify damages in state court, a removing defendant must prove by the 
preponderance of the evidence that the amount in controversy exceeds the jurisdictional 
requirement. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010). But how 

a court is to determine this and what evidence it is permitted to consider depend on when 
the case was removed to federal court. 
 Based on the circumstances under which the defendant removed the case to federal 
court, the Eleventh Circuit has set forth two different standards to evaluate whether a 
plaintiff’s claims satisfy federal diversity jurisdiction prerequisites. When the Circuit first 
examined this question, it taught, a “court considers the document received by the 
defendant from the plaintiff—be it the initial complaint or a later received paper—and 

determines whether that document and the notice of removal unambiguously establish 
federal jurisdiction.” Lowery v. Alabama Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007). 
Relying on the fact Lowery was a later § 1446(b)(3) removal, a subsequent Circuit panel 
cabined the document received by the plaintiff and unambiguously establish language to 
only apply to second paragraph removal actions. Pretka v. Kolter City Plaza II, Inc., 608 

F.3d 744, 763 (11th Cir. 2010). And it also cautioned courts against “[i]mplicitly reading 
the language into the first paragraph of that subsection, where it does not exist . . . .” Id. 
 By distinguishing first and second paragraph removal, Pretka identifies a less 
demanding path for removal under § 1446(b)(1). The Circuit explained, “[w]hen the 
complaint does not claim a specific amount of damages, removal from state court is 

[jurisdictionally] proper if it is facially apparent from the complaint that the amount in 
controversy exceeds the jurisdictional requirement.” Pretka, 608 F.3d at 754 (citing 
Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001)). And if the 
jurisdictional amount is not facially apparent from the complaint, the court should look to 
“the notice of removal and may require evidence relevant to the amount in controversy at 

the time the case was removed.” Id. The Circuit also expanded the types of evidence 
defendants could use to show the existence of the required amount in controversy. Pretka, 
608 F.3d at 755 (“Defendants may introduce their own affidavits, declarations, or other 
documentation . . . .”). 
 Pretka also clarifies how courts are to discern whether the required amount in 
controversy exists based on the notice of removal and any attendant evidence. The Pretka 
court reframed Lowery as a case about “how to apply the preponderance of the evidence 

standard in the ‘fact-free context’ of that particular case.” Pretka, 608 F.3d at 753. In that 
fact-free context, the amount in controversy could only be determined “by the looking at 
stars” and that, of course, would be impermissible. Id at 753–54. So when a moving 
defendant actually makes specific factual allegations and can support those allegations, a 
court may make “reasonable deductions, reasonable inferences, or other reasonable 

extrapolations” from the pleadings to aid in its determination whether the required amount 
in controversy exists. Roe, 613 F.3d at 1061–62 (citing Pretka, 608 F.3d at 754). 
Essentially, the court is not required to “suspend reality or shelve common sense” to 
determine whether the complaint or other documents establish the jurisdictional amount. 
Pretka, 608 F.3d at 770 (citing Roe v. Michelin, 637 F.Supp.2d 995, 999 (M.D. Ala. 2009)). 

Rather, courts are to use their “judicial experience and common sense” to evaluate whether 
the amount in controversy meets the jurisdictional requirement. Roe, 637 F.Supp.2d at 999. 
It is important to keep in mind “a removing defendant is not required to prove the amount 
in controversy beyond all doubt or to banish all uncertainty about it.” Jones v. Novartis 
Pharm. Co., 952 F.Supp.2d 1277, 1283 (N.D. Ala. 2013) (citing Pretka, 608 F.3d at 754). 

While the court may not speculate to the exact dollar amount, it can conclude, for example, 
without speculating “from the egregious conduct alleged that the amount, whatever it is, 
far exceeds $75,000.” Pretka, 608 F.3d at 754 (citing Roe, 637 F.Supp.2d at 999). But if 
the defendant’s evidence is insufficient, the court may not “speculate in an attempt to make 
up for the notice’s failings.” Pretka, 608 F.3d at 752 (quoting Lowery, 483 F.3d at 1214–
15). 
 To summarize, before determining—when not clear from the pleadings—if the 

amount in controversy exists, courts must first determine which of the two removal 
provisions apply based on when in the life of the case it was removed. After a court 
determines which applies, it is to consider the evidence appropriate under each removal 
action. When a defendant removes a case within the first thirty days after receipt of the 
initial complaint, the court may determine whether, by the preponderance of the evidence, 

the required amount in controversy exists based on both the initial complaint and other 
evidence introduced by the defendant with the notice of removal. But if diversity 
jurisdiction is not apparent from the initial complaint but the case later becomes removable, 
the court may only evaluate “the initial complaint or a later received paper [from the 
plaintiff]” and the notice of removal to determine whether the amount in controversy is 

unambiguously established. Lowery, 483 F.3d at 1213. Under either standard, the court 
may use “deduction, inference, or other extrapolation” to determine whether the relevant 
evidence submitted by the removing party supports the existence of the required amount in 
controversy. Pretka, 608 F.3d at 753. But this ability for courts to consider the amount in 
controversy is limited. When the court is presented with a notice of removal without facts 

or specific allegations, it may not speculate or divine “by looking at the stars” the amount 
in controversy. Id. (citing Lowery, 483 F.3d at 1209, 1215.). 
 III. FACTS AND PROCEDURAL HISTORY 
 Around midnight in December 2019, Charles Sullins was driving his car north on 
Interstate 85 in Macon County, Alabama. At the same time, Jeffrey Moreland was driving 

an 18-wheeler also north on Interstate 85. J & J Martin employed Moreland and owned 
his 18-wheeler. Moreland’s truck collided with Sullins’ car. This collision seriously 
injured Sullins, and his car had to be towed away from the scene. (Doc. 1-2 at 3–4). 
 On June 23, 2020, the Plaintiff sued Jeffrey Moreland and J & J Martin in Macon 
County, Alabama, for negligence; negligent hiring, training, supervision, retention; 

negligent entrustment; and recklessness and wantonness. (See Doc 1-1). Sullins alleged 
various physical and emotional injuries and damages including medical and financial 
losses. The Plaintiff sought compensatory and punitive damages against Moreland and J 
& J Martin. (Doc. 1-2 at 4–7). A copy of the complaint and summons was served by 
certified mail on Defendants Moreland and J & J Martin on June 27, 2020. (Doc. 1 at 2; 

doc 1-3 at 44–48). 
 On July 17, before the Defendants answered the initial complaint, Sullins amended 
his complaint and joined his auto-insurer, Geico. In his amended complaint, he brought an 
underinsured motorist claim against Geico for any damages over Moreland’s and J & J 
Martin’s insurance policy limit. (Doc 1-2 at 7–8). The Plaintiff also claims Geico “agreed 

to pay all sums that the insured party would be legally entitled to recover as damages from 
the owner and operator of an uninsured and underinsured vehicle.” (Id.). 
 On July 27, within thirty days of receiving the initial complaint, the Defendants 
removed the case to federal court based on diversity jurisdiction. Geico consented to the 
removal. (Doc. 1-5 at 2). At the end of August, the Plaintiff filed a motion to remand the 
case back to state court. (Doc. 14). 
 IV. DISCUSSION 

 Plaintiff seeks remand of this case back to state court. Both parties agree that 
complete diversity exists. (Doc. 14 at 2). But the Plaintiff argues the Defendants failed to 
establish that his claim meets the $75,000 amount in controversy required by 28 U.S.C § 
1332 federal diversity jurisdiction. (Doc. 14 at 2). 
 In his motion to remand, the Plaintiff argues the Defendants failed to prove by the 

preponderance of the evidence that the amount in controversy is facially apparent or 
unambiguously established from the Plaintiff’s complaint. (Doc. 14 at 3–6). The Plaintiff 
also argues his claim for underinsured motorist coverage against Geico is not relevant to 
the amount in controversy. Finally, the Plaintiff rejects any argument that he must stipulate 
that the amount in controversy is less than the jurisdictional requirement. 

 To determine whether the case should be remanded back to state court, this Court 
will first determine whether this is a § 1446(b)(1) first paragraph or § 1446(b)(3) second 
paragraph removal action. And based on that determination, the Court will then consider 
the evidence and apply the appropriate standard to determine if the defendant has shown 
the amount in controversy exists. 

A. This case was removed based on the initial complaint under § 1446(b)(1) first 
paragraph removal. 

 There are several reasons why this case might seem removable under either removal 
section. For example, in their notice of removal, the Defendants stated that the case was 
removed under § 1446(b), but they did not specify under which section. (Doc. 1 at 2). The 
Plaintiff also used both the “facially apparent” and “unambiguously establish” language to 
challenge the amount in controversy. (Doc. 14 at 2–6). But perhaps most importantly, 

determining the removal standard was also complicated by the fact the Plaintiff filed an 
amended complaint in the first 30 days before there was an opportunity for the Defendants 
to respond to the initial complaint. Despite this lack of clarity, this Court concludes that 
this case was properly removed under § 1446(b)(1). 
 In making this determination, this Court looks to the example set by the Circuit in 

Pretka. There, the plaintiffs amended their complaint within thirty days of filing the 
original complaint. Pretka, 608 F.3d at 747. The Circuit noted that the two complaints 
were “materially identical except that the amended complaint was brought by all seven, 
instead of just three, named plaintiffs.” Id. Even though the amended complaint 
“contain[ed] some additional information on the amount in controversy,” the Circuit 

decided to accept and “refer to the amended, operative complaint as ‘the complaint’ . . . .” 
Id. at 747–48. Although the defendant in Pretka arguably removed an amended pleading, 
the Circuit concluded that the removal action was governed by § 1446(b)(1) “[b]ecause 
[the defendant] filed its notice of removal within thirty days of being served with the 
summons and initial complaint.” Id. at 757. And therefore, the defendant’s removal was 

timely because the notice of removal was filed within the specified time for first paragraph 
removal. Id. This can be contrasted to Lowery where the defendant removed the case three 
years after the plaintiffs filed the initial complaint and, therefore, had to rely on the second 
paragraph as the ground for removal. Pretka, 608 F.3d at 757 (citing Lowery, 483 F.3d at 
1188). The Circuit noted Lowery was “long after the closing of the 30-day removal window 
supplied by the first paragraph of § 1446(b).” Id. In Pretka¸ it also explained the defendant 
‘“do[es] not, and do[es] not need to, invoke the second paragraph’s extended filing 

period.’” Id. at 757 (citing Badon v. R J R Nabisco Inc., 224 F.3d 382, 390 (5th Cir. 2000)).1 
Because the amended complaint was removed to federal court within thirty days of the 
defendant’s receipt of the initial complaint, the Circuit concluded that the case arose “under 
the first paragraph of § 1446(b).” Pretka, 608 F.3d at 757, 768. 
 In the instant case, the Plaintiff filed his original complaint in state court on June 

23, 2020, and the Defendants Moreland and J & J Martin were properly served on June 27, 
2020. The Plaintiff amended his complaint on July 17, 2020 to add Geico. Without 
answering either complaint, on July 27, 2020, the Defendants, with the consent of Geico, 
removed this case to federal court. Because the Defendants removed the case to federal 
court within the thirty-day window prescribed in § 1446(b)(1), this Court finds that, 

consistent with Pretka, this case was properly removed under § 1446(b)(1). 
 To find otherwise would require courts to speculate the motives of removal and 
would incentivize opportunistic pleading on the part of plaintiffs. Under both Alabama 
and federal law, an amended complaint supersedes the initial complaint and becomes the 
operative pleading in the case. Lowery, 483 F.3d at 1219; Ex parte Puccio, 923 So.2d 1069, 

1072–73 (Ala. 2005). The Supreme Court further explains, “when a plaintiff files a 

1 See also Badon v. R J R Nabisco Inc., 224 F.3d 382, 390 (5th Cir. 2000) (“It is wholly evident that the purpose of 
the second paragraph is to extend the time for filing notice of removal under the stated circumstance, and not to in 
any event shorten it to less than it would be under the first paragraph.”). 
complaint in federal court and then voluntarily amends the complaint, courts look to the 
amended complaint to determine jurisdiction.” Rockwell Int'l Corp. v. United States, 549 
U.S. 457, 474 (2007). Although it might appear that the amended complaint would fall 

under “amended pleading” in § 1447(b)(3), this understanding would create the strange 
outcome whereby the Defendants would have to rely on the initial complaint and the 
amended complaint separately to make their argument for removal. But the court in Lowery 
prohibited a similar practice. 483 F.3d at 1219 (“[i]t would be improper to bind the 
plaintiffs by the prayer for relief in the initial pleadings.”). Similarly, a removing defendant 

would not be able to simply ignore the amended portion of the complaint added within the 
first thirty days and solely focus on the original complaint. This is supported by Circuit 
precedent that teaches “an amended pleading supersedes the former pleading; the original 
pleading is abandoned by the amendment and is no longer a part of the pleader's averments 
against his adversary.” Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th 

Cir. 2007). This would also create perverse incentives for plaintiffs to amend pleadings 
within the first thirty days to subject any potential removal to the higher Lowery standard. 
Because the Plaintiff amended the complaint within thirty days after being served and the 
Defendants removed the complaint within that same period, this Court will consider the 
amended complaint under § 1446(b)(1) instead of § 1446(b)(3). 

 Because the suit is governed § 1446(b)(1), the Defendants are not limited to 
documents “generated or compiled” by the Plaintiff to unambiguously establish the 
jurisdictional requirement as required by Lowery. 483 F.3d at 1213. Instead, the Court may 
consider the Defendants’ “affidavits, declarations, or other documentation” when the 
amount in controversy is not facially apparent from the complaint. Pretka, 608 F.3d at 755. 
B. The Plaintiff’s complaint and the Defendants’ notice of removal more likely than 
not show that the requisite amount in controversy exists. 

 The Defendants argue the Plaintiff’s complaint meets the amount in controversy 
requirement for three reasons. First, the Defendants argue that the Plaintiff’s alleging 
serious bodily injuries and destruction of his vehicle coupled with a variety of 
compensatory and punitive damages sufficiently establish the amount in controversy. (Doc. 
1 at 5–6). The Defendants buttress this claim by adding that the venue “is notorious for 
substantially large jury verdict awards to personal injury plaintiffs (particular in cases 
against out-of-state corporations) . . . .” (Id. at 5). Next, the Defendants argue the Plaintiff’s 

failure to stipulate to the value of his claims is evidence of the required amount in 
controversy. (Id. at 8). Finally, the Defendants argue that by bringing an underinsured 
carrier claim against his insurer the Plaintiff concedes that he is seeking more than the 
statutory minimum insurance coverage for interstate carriers—$750,000. (Id. at 10). 
 The Court will consider these claims in turn and in totality to determine if the 

Defendants have shown by the preponderance of the evidence that the required amount in 
controversy exists. Because a defendant or a court itself may be better situated to 
accurately assess the amount in controversy, the Court is not bound by the Plaintiff’s 
representations regarding his claim, nor must it “assume that the Plaintiff is in the best 
position to evaluate the amount of damages sought.” Roe, 613 F.3d at 1061. 
 1. The nature of the injuries and type of damages requested make it more likely 
 that the amount in controversy exists. 

 The injuries and damages sought by the Plaintiff are of a type that make it more 
likely that the required amount in controversy exists. The Plaintiff sued the Defendants for 
negligence; negligent hiring, training, supervision, retention; negligent entrustment; and 
recklessness and wantoness. (Doc. 1-2 at 3–7). The Plaintiff alleges that he suffered 
“serious bodily injuries,” and the accident left his vehicle inoperable. (Id. at 3–4). And as 
a result of these injuries, the Plaintiff seeks damages for the following harms: (1) serious 
bodily injuries; (2) other bodily injuries; (3) loss of enjoyment of life; (4) medical bills and 
other financial losses; (5) past, present, and future pain and suffering; and (6) past, present, 
and future mental anguish and emotional distress. (Id. at 4). Plaintiff seeks both 

compensatory and punitive damages against Moreland and J & J Martin. (Id.). 
 The Defendants remind the Court that “judicial experience and common sense” 
would suggest that the nature of injuries coupled with unspecified punitive damages show 
the amount in controversy has been met. (Doc. 1 at 14). To support this claim, the 
Defendants rely on several Northern District of Alabama cases that assert some variation 

of the premise that claims for unspecified punitive damages almost always meet the 
jurisdictional requirement. Tucker v. Northbrook Indem. Co., 2013 WL 5961095, at *1 
(N.D. Ala. Nov. 7, 2013) (“The ‘legal certainty’ that there could not be sufficient punitive 
damages to take the recovery beyond $75,000 is virtually impossible to demonstrate.”); 
Jones v. Hartford Fire Ins. Co. 2013 WL 550419, at *1 (N.D. Ala. Feb. 7, 2013) (“the 

moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive 
damages . . . the claim automatically is deemed to exceed $75,000 and becomes removable 
under 28 U.S.C. § 1332.”); Smith v. State Farm Fire & Cas. Co., 868 F.Supp.2d 1333, 
1335 (N.D. Ala. 2012) (concluding when pursuing claims against diverse parties seeking 

unspecified damages of various kinds, including punitive damages, plaintiffs must formally 
and expressly disclaim any entitlement to more than jurisdictional amount). 
 The Plaintiff responds that the Defendants put forth nothing more than conclusory 
assertions about the existence of the required amount in controversy. The Plaintiff argues 
that the Court should not rely on a “conclusory allegation in the notice of removal that the 

jurisdictional amount is satisfied, without setting forth the underlying facts supporting such 
an assertion . . . .” Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) 
(quoting Williams, 269 F.3d at 1319–20). The Plaintiff supports this claim by pointing to 
Eleventh Circuit precedent where the Court found the amount in controversy to be 
inconclusive where a complaint pleaded only “general, special, and punitive damages for 

permanent physical and mental injuries, as well as substantial medical expenses, lost 
wages, and diminished earning capacity . . . .” Williams, 269 F.3d at 1320. Similar to 
Williams, the Plaintiff argues the Defendants have not shown that the amount in 
controversy is facially apparent, because, to support their removal, the Defendants rely on 
general, special, and punitive damages from the injuries caused by the Defendants’ alleged 

negligent, reckless, and wanton misconduct. (Doc. 14 at 5). The Plaintiff concludes that 
the fact that there was serious bodily injury and the vehicle was rendered inoperable is not 
enough to show that the amount in controversy is facially apparent. (Id. at 6). 
 Although the Court does not accept the notion that a complaint with unspecified 
punitive damages necessarily meets the jurisdictional minimum, it does find the nature of 
the claims, extent of alleged damages, and the damages sought to be probative and useful 

to determine whether the required amount in controversy exists. As described in Pretka, a 
court may make “reasonable deductions, reasonable inferences, or other reasonable 
extrapolations” when a removing defendant makes “factual allegations establishing 
jurisdiction and can support them . . . .” Pretka, 608 F. 3d at 754. This case involves a 
collision with an 18-wheeler that resulted in “serious bodily injuries” and rendered the 

Plaintiff’s car inoperable. (Doc. 1-2 at 3–4). The Plaintiff correctly notes that the Williams 
court remanded when the plaintiff in that case alleged unspecified injuries and damages as 
a result of a fall in the Best Buy parking lot and refused to stipulate her claim was less than 
the jurisdictional minimum. Williams, 269 F.3d at 1318. But the instant case can be 
distinguished from Williams because the Plaintiff pleaded more than conclusory statements 

or bare pleadings. In Williams, the defendant removed the case solely because the plaintiff 
refused to stipulate. Id. at 1318, 1320. And the defendant’s notice of removal contained 
“no other factual allegations regarding the amount in controversy” and “did not submit any 
evidence concerning the amount in controversy.” Id. at 1320. By alleging he suffered 
“severe bodily injury” and the fact his car was left inoperable, the Plaintiff provided facts 

that go beyond the bare pleadings in Williams. Although these facts might show that the 
amount in controversy could well exceed the statutory minimum, they alone do not make 
the amount in controversy facially apparent. Because of this, the Court looks to the 
Defendants’ notice of removal for more evidence. Williams, 269 F.3d at 1319. 
 2. Not stipulating to the amount in controversy requirement is persuasive but not 
 dispositive to the existence of the amount in controversy. 

 In their notice of removal, the Defendants argue the Plaintiff’s failure to stipulate 
that the value of his claims are less than $75,000 supports the existence of the required 
amount in controversy. Refusing to stipulate that the amount in controversy is less than 
the jurisdictional requirement is not dipositive, but it nevertheless is probative to the 
existence of the amount in controversy. The Eleventh Circuit has held that “a refusal to 
stipulate standing alone does not satisfy [the defendant’s] burden of proof on the 
jurisdictional issue.” Williams, 269 F.3d at 1320 (emphasis added). But this does not mean 
that a court may never consider a refusal to stipulate—just that it may not rely on it alone 
to conclude that the required amount in controversy exists. Where a defendant does not 

rely exclusively on a refusal to stipulate to substantiate all his or her argument, a court may 
consider such a refusal in making its decision on whether to remand the case. Jones v. 
Novartis Pharm. Co., 952 F.Supp.2d 1277, 1286–87 (N.D. Ala. 2013); see also Devore v. 
Howmedica Osteonics Corp., 658 F.Supp.2d 1372, 1380 (M. D. Fla. 2009) (“[A] plaintiff's 
refusal to stipulate or admit that she is not seeking damages in excess of the requisite 

amount should be considered when assessing the amount in controversy.”). 
 The Parties set out two diametrically opposite positions on how the Court should 
consider the Plaintiff’s refusal to stipulate. Plaintiff points to Williams to support his claim 
that he is not required to state that he seeks less than the jurisdictional minimum. (Doc. 14 
at 5–6). And because of this, the Court should not consider his refusal to stipulate. (Id. at 

5–6, 8–9). On the other hand, the Defendants again cite the string of cases from the 
Northern District of Alabama that required plaintiffs to disclaim a recovery above the 
jurisdictional amount when seeking various types of unspecified damages including 
punitive. See Tucker, 2013 WL 5961095 at *1; Jones, 2013 WL 550419 at *1; Smith, 868 

F.Supp.2d at 1335. The Court considers the Plaintiff’s failure to stipulate somewhere in 
between the parties’ respective positions. 
 Here, the failure to stipulate is one among several reasons why the amount in 
controversy exists. Unlike in Williams, where the defendants solely relied on a refusal to 
stipulate, Defendants here point to the nature of the claims, damages, the addition of the 

Plaintiff’s underinsured carrier claim, facts about the extent of damages—although few—
in addition to the fact that the Plaintiff refused to stipulate to less than the jurisdictional 
prerequisite. Accordingly, Williams does not preclude the Court’s consideration of the 
failure to stipulate when determining the amount in controversy. But this is not to say that 
the Court agrees with the Defendants’ contention that a failure to stipulate the amount in 

controversy necessarily triggers federal jurisdiction. Instead, the Court finds that the 
failure to stipulate is relevant, but not dispositive, as to whether the amount in controversy 
is present. The Court concludes that the Plaintiff’s failure to stipulate is one factor that 
tends to show that the amount in controversy more likely exists. 
 3. The Plaintiff’s adding his auto insurer through an underinsured motorist 
 claim is probative to the value of his claim. 

 The Defendants argue that by seeking underinsured motorist damages from Geico, 
the Plaintiff “presupposes that he values his case at more than the Defendant Moreland and 
J & J Martin’s insurance liability limits.” (Doc. 1 at 10). Federally regulated motor carriers 
are statutorily mandated to have $750,000 in liability insurance,3 and J & J Martin actually 
had $1,000,000 in coverage. (Doc. 1-6). Therefore, the Defendants argue that the Plaintiff 
is at least seeking $750,000 in damages because underinsured coverage only applies when 

the Defendants’ underlying insurance coverage has been exhausted. (Id. at 6–7, 10). 
Pointing to the Plaintiff’s “claim for judgment for all compensatory damages and punitive 
damages” against Geico, the Defendants reject the Plaintiff’s contention that they only sued 
Geico to put them on notice of their pending suit. (Doc. 19 at 9). The Defendants remind 
the Court that Alabama law does not require joining an underinsured carrier because a 

plaintiff may “merely provide notice to the UIM carrier of the action and the possibility of 
a UIM carrier claim.” (Id. at 8). 
 In his motion to remand, Plaintiffs argue that the Defendants are speculating when 
they say adding an underinsured claim against Geico is demonstrative of the amount in 
controversy. Relying on Lowery, the Plaintiff asserts a “document received by the 

defendant from the plaintiff—be it the initial complaint or a later received paper—” must 
“unambiguously establish federal jurisdiction.” (Doc. 14 at 6). In addition, the Plaintiff 
argues that at the time of the initial and amended complaint he was not aware of the 
Defendant J & J Martin’s policy limits and only joined Geico to put his insurer on notice 
of the pending litigation. 

 The Alabama Uninsured Motorist statute is designed to protect those who are 
“legally entitled to recover damages from owners or operators of uninsured motor vehicles” 

3 See 49 C. F.R. § 387.301(a)(1) & 387.303(b)(2). 
including when limits of “insurance policies available to an injured person” are “less than 
the damages which the injured person is entitled to recover.” Ala. Code § 32-7-23(a) & 
(b)(4). In such a situation, the Supreme Court of Alabama explained, “[underinsured 

motorist] coverage, by definition, does not duplicate liability coverage but is coverage in 
excess of liability coverage, and is available to a claimant only after the claimant has 
exhausted available liability coverages.” State Farm Mut. Auto. Ins. Co. v. Motley, 909 
So.2d 806, 811 (Ala. 2005) (emphasis in original) (citing Dillard v. Ala. Ins. Guar. Ass'n, 
601 So.2d 894, 896 (Ala. 1992)). The Defendants are correct that “[a] plaintiff is allowed 

either to join as a party defendant his own liability insurer in a suit against the underinsured 
motorist or merely to give it [the insurance carrier] notice of the filing of the action . . . .” 
Ex parte Geico Cas. Co., 58 So.3d 741, 743 (Ala. 2010) (emphasis in original) (citing Lowe 
v. Nationwide, 521 So.2d 1309, 1310 (Ala. 1988)). 
 Considering the nature of an underinsured claim and the fact that state law did not 

require the Plaintiff to bring a claim against his insurer, this Court finds the Plaintiff’s 
joining Geico probative to determine whether the required amount in controversy exists. 
First, this Court finds it telling that the Plaintiff joined Geico when it simply could have 
provided notice to his insurer of the pending lawsuit. If one is to accept the truism that the 
“plaintiff is the master of the complaint,” the Court should take seriously the implications 

of the Plaintiff voluntarily adding Geico when alternative means of preserving an 
underinsured auto claim were available to him. If we are to take the Plaintiff at his word 
when he asserts “a claim for judgment for all compensatory damages and punitive damages 
against” Geico, he is doing more than providing notice to his insurer by adding Geico to 
the case. (Doc. 1-2 at 7–8). 
 Second, the Court finds it unpersuasive that the Plaintiff was not aware that J & J 

Martin had or was required to carry the federally mandated insurance minimum. The 
Plaintiff argues that the chain of inferences required to support the Defendants’ contention 
that he is seeking a recovery at or above the statutory threshold is “pure speculation.” (Doc. 
14 at 6). The Plaintiff argues that it would be speculative for the Court to assume that he 
knew “whether or not Federal statutory law required trucks/trailers on United States 

roadways to maintain minimum limits of liability insurance in order to have federal 
operating authority.” (Id.). He further labels as speculative that he knew “Defendant J & J 
Martin, Inc. was in compliance with the United States Codes of Federal Regulations 
minimum compulsory financial responsibility requirements of at least $750,000.00 . . . .” 
(Id.). The Court instead finds that these are “reasonable deductions, reasonable inferences, 

or other reasonable extrapolations” that it can make in assessing whether the required 
amount in controversy exists in this case. Roe, 613 F.3d at 1061–62 (citing Pretka, 608 
F.3d at 754). The Plaintiff knew that J & J Martin was an out-of-state trucking company, 
so it is reasonable to conclude that he would know that the Defendant would be covered by 
federal trucking laws. (Doc. 1-2 at 2). And the amount of insurance required was not a 

secret but was instead required by federal law. 
 But even with these things in mind, the Plaintiff alleges he was unaware of the 
Defendant J & J Martin’s insurance policy limits or that the coverage would cover the 
Plaintiff’s damages. Even if the Court were to accept the Plaintiff’s claims that he did not 
know that J & J Martin had or was required to have at the time of the accident $750,000 in 
insurance, the Court may still consider the “affidavits, declarations, or other 
documentation” provided by the Defendants. In its notice of removal, the Defendants 

included a declaration of the president of J & J Martin who explained that the company is 
an interstate motor carrier, was required by federal law to carry a minimum of $750,000 in 
insurance, and at the time of the incident was in compliance with federally required 
“minimum responsibility” by having coverage of $1,000,000. (Doc. 1-6). With Roe’s 
admonition that “the defendant or the court itself may be better-situated to accurately assess 

the amount in controversy” in mind, the Court concludes that the Plaintiff should have 
known that Defendant J & J Martin was insured for at least $750,000. Roe, 613 F.3d at 
1061. And even if he did not know, it is largely irrelevant because J & J Martin did carry 
the required insurance. (Doc. 1 at 10; doc. 1-6 at 4–6). The Defendants provided enough 
evidence to show that they are indeed insured for well over the statutory minimum. 

C. Considering the evidence in the complaint and notice of remand, the Court 
concludes the amount in controversy has been established by the preponderance 
of evidence. 

 Based on the nature of the injuries described, the damages sought, the refusal to 
stipulate that the claim is less than $75,000, and the addition of an underinsured carrier 
claim, this Court concludes that the amount in controversy in this case more likely than not 
exceeds the jurisdictional amount. The Plaintiff argues throughout his pleadings that not 
one of these factors would be enough to create federal jurisdiction. But, in this case, there 
is not one, but multiple factors that weigh against remand. 
 Nevertheless, the Plaintiff implies that considering all these factors together is 
insufficient for a court to find that the statutory minimum exists. Citing Toole v. Chupp, 
456 F.Supp.2d 1218, 1222 (M.D. Ala. 2006), the Plaintiff argues the Defendants are 

required to show more than they already have to prove the existence of the amount in 
controversy. (Doc. 14 at 7–8). In Toole, the court found that the jurisdictional minimum 
was met when the plaintiff, in addition to alleging substantial bodily harm, lifelong pain 
and suffering, and adding an underinsured carrier claim, conceded he “could see a jury 
‘bringing back more than seventy-five thousand.’” Toole, 456 F.Supp.2d at 1222. 

However, subsequent courts have not interpreted that holding to require some sort of 
acknowledgement by plaintiffs that their damages exceed the jurisdictional threshold. This 
would fly in the face of past Circuit precedent that allows judges to make reasonable 
inferences and deductions about the value of the claims. Roe, 613 F.3d at 1061–62 (citing 
Pretka, 608 F.3d at 754). Although it would be helpful in this case if the Plaintiff specified 

what sort of damages award he is seeking, it is not required. Even though there has been 
no concession by the Plaintiff that the amount in controversy exceeds the requisite amount, 
the nature of the injuries described, the damages sought, the refusal to stipulate that the 
claim is less than $75,000, and the addition of an underinsured carrier claim make it more 
likely than not that the amount in controversy has been met. 
 V. CONCLUSION 
 Based on the Plaintiff’s complaint and the Defendants’ notice of removal, the 
amount in controversy more likely than not exceeds $75,000. 

 Therefore, for the reasons as stated, and for good cause, it is ORDERED that the 
Plaintiff’s motion to remand (doc. 14) is DENIED. 
DONE this 6th day of January 2021. 

 /s/ Emily C. Marks 
 EMILY C. MARKS 
 CHIEF UNITED STATES DISTRICT JUDGE